NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 6, 2016
Decided January 11, 2017

**Before**

DIANE P. WOOD, *Chief Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

No. 16-1183

| | |
|---|---|
| BRENDA LEE KLEVEN, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Western District of Wisconsin. |
| | |
| *v.* | No. 15-cv-00124 |
| | |
| CAROLYN W. COLVIN, | Barbara B. Crabb, |
| Acting Commissioner of Social Security, | *Judge*. |
| *Defendant-Appellee*. | |

### O R D E R

Four years after she obtained disability insurance benefits as a result of injuries suffered in a multi-car accident, Brenda Lee Kleven was determined by an administrative law judge to have experienced "medical improvement" sufficient to return to work. *See* 20 C.F.R. 404.1594(b)(1). Kleven appeals the district court's judgment upholding the Commissioner's termination of her benefits, arguing that the ALJ wrongly discounted evidence from her treating physician and failed to sufficiently consider her complaints of pain. We have reviewed the record and find the ALJ's decision is supported by substantial evidence. We affirm.

In early 2006 Kleven was driving slowly behind a tractor in dense fog when a truck traveling 55 to 60 miles per hour rear-ended her. The impact pushed her vehicle into oncoming traffic, where it was struck at least twice more. The collision left Kleven with six cracked ribs and "at least" two compression fractures in her thoracic spine.

One year after her accident, Kleven underwent spinal surgery. Two surgeons removed one of her vertebrae and replaced it with a piece of one of her ribs, then used plates and screws to fuse three of her vertebrae. Her surgeons noted that recovery would take at least a year. Kleven then applied for disability benefits, and in late 2007 the Commissioner found her disabled as of the accident date.

After her surgery, Kleven continued to seek treatment for chronic pain. In 2009 a neurosurgeon reviewing her MRI opined that it "actually looks pretty good" and concluded that the risks of undergoing a second surgery outweighed the potential benefit, as there was no way to guarantee that the surgery would even help. Meanwhile Kleven's treating physician, Dr. DeHart, continued to prescribe strong narcotics to treat her complaints of chronic pain. In mid-2010 Dr. Dehart completed a range-of-motion test to investigate Kleven's hip pain; he found her to have a normal range of motion but tenderness across her left hip and back. Dr. DeHart's monthly treatment notes over the following three years reflect Kleven's consistent allegations of hip and back pain along with increasing doses of narcotics to manage it.

Meanwhile, the Commissioner had begun a periodic review to determine whether Kleven remained disabled. In late 2011, Dr. Eric Boehmer examined Kleven for the Agency and concluded that her complaints of pain likely were exaggerated. The doctor wrote that, according to the patient, "'Everything' aggrevates [sic] her pain," and that she reported being able to sit or stand for only 10 to 15 minutes at a time—although she had driven 75 minutes to the appointment, without any apparent discomfort. Dr. Boehmer noted that he had watched Kleven leave the building and bounce into her vehicle's driver seat with no perceptible difficulty. He also reviewed her X-rays and MRIs and recorded mild degenerative changes, but no other abnormalities. Dr. Boehmer wrote that Kleven should be able to sit for at least 45 minutes, the duration of the exam, without needing a break. Finally, he described her complaints of radiating lumbar pain as "bizarre" and something he had not encountered before.

A non-examining agency consultant, Dr. Pat Chan, then examined Kleven's records and concluded that she had experienced sufficient medical improvement to perform light work. Dr. Chan relied heavily on Dr. Boehmer's report, and found it "not surprising" that he doubted Kleven's veracity. Dr. Chan opined that Kleven could

perform light work, meaning that she could lift up to 20 pounds and stand, walk, or sit for about six hours in an eight-hour work day.

In early 2012, Dr. DeHart completed a Medical Assessment Form on which he concluded that, based on his experience treating Kleven during the six years since her accident, her primary problems—chronic back pain, right rib pain, and intermittent leg weakness—were unlikely to improve. He wrote that she suffers from constant pain in her back, which would cause her to miss work more than four days per month. Dr. DeHart concluded that Kleven could walk no more than half a block without resting, sit or stand for no more than five to ten minutes consecutively and for no more than two hours per day, and needed to walk with a cane.

In early 2013, a second non-examining agency consultant, Dr. Mina Khorshidi, determined that Kleven's medical records showed her capable of returning to work. Dr. Khorshidi concluded that Kleven could sit for about six hours per day and stand or walk at least two hours in an eight-hour workday. Dr. Khorshidi found Kleven's allegations of pain only partly credible, "given . . . that her complaints of pain severity are not supported by the objective evidence," and concluded that Kleven's condition had improved sufficiently for her to perform sedentary work.

At a hearing before an ALJ in late 2013, Kleven testified that she could not sit or stand for longer than 15 or 20 minutes, that she had to lie down several times per day, and that, on a bad day, she left the bed only to use the bathroom. She acknowledged that she had been working part-time as a teacher's aide over the previous two years, but claimed that, after one shift, it took her at least a full day to recover. She also told the ALJ that she took monthly camping trips with her husband to get out of the house, but spent most of the day lying in the camper due to pain. The ALJ then asked a vocational expert whether jobs exist in significant numbers that could be performed by a hypothetical individual with Kleven's characteristics who was limited to sedentary work. The VE replied that such an individual could work as a production worker, information clerk, or office clerk, but that those jobs would not permit a worker to be off-task more than ten percent of the work day or absent more frequently than once per month.

The ALJ issued a written decision finding that Kleven's disability had ended in September 2011 (the same month as Dr. Boehmer's examination). The ALJ concluded that, based on treatment records and medical evidence leading up to that date, Kleven had experienced medical improvement, meaning "any decrease in medical severity of the impairment(s)," *see* 20 C.F.R. 404.1594(b)(1), sufficient to allow her to perform

sedentary work. Specifically, the ALJ found Kleven able to stand and walk "4 hours collectively, and sit about 6 hours collectively, in an 8-hour workday." As evidence of Kleven's improvement, the ALJ relied on the surgeon's 2009 description of her spine MRI as "pretty good," the mild to moderate deformities and changes noted in her 2011 X-rays, and, in particular, Dr. Boehmer's evaluation recounting that Kleven had lifted her purse from the floor and climbed into her vehicle without difficulty. He then concluded that Kleven's pain allegations were not credible to the extent they were inconsistent with his assessment of her abilities because, the ALJ wrote, her complaints were unsupported by objective medical testing and inconsistent with her admissions to working as a teacher's aide and camping with her family. He declined to give controlling weight to the opinions of her treating physician, Dr. DeHart, because the ALJ found "little objective support" in the form of specific test results to justify the degree of limitations the doctor stated. And Dr. DeHart's opinions were inconsistent with other evidence in the record, particularly Dr. Boehmer's assessment. Conversely, the ALJ accorded "great weight" to the opinion of Dr. Khorshidi, the agency consultant, because he found her assessment to be more consistent with the objective medical evidence. The ALJ concluded that Kleven's medical conditions had improved sufficiently for her to perform several unskilled, sedentary jobs identified by the VE.

After the appeals council denied review, Kleven brought this suit challenging the Commissioner's denial of her benefits. The district court upheld the denial, however, and Kleven appeals.

After carefully reviewing the record, we adopt the district court's thorough analysis and agree that the ALJ's decision rests on substantial evidence. As the district court explained, the ALJ properly supported his decision to not give controlling weight to the opinions of Kleven's primary physician, Dr. DeHart, because they directly contrasted with the opinions of the consulting examiner and the agency consultants, and because the limitations he described were unsupported by his own treatment notes and objective medical findings. The ALJ did not discount Dr. DeHart's opinions altogether; rather, he weighed them in conjunction with the other, contradictory evidence that supported Kleven's ability to perform sedentary work. We also agree with the district court that the ALJ's credibility findings were well-supported by the facts. The ALJ gave some credence to Kleven's testimony—he accepted her statements that she could no longer perform her past work and, accordingly, limited her to sedentary work. But the ALJ adequately explained his reasons for not crediting her complaints of disabling pain: all three of the Agency consultant physicians found her allegations inconsistent with the medical evidence; Kleven testified that she had worked

as a teacher's aide for the previous two years; and reported activities—such as camping with her family—that the ALJ considered inconsistent with the degree of limitations she reported. Viewing the record as a whole, we conclude that substantial evidence supports the ALJ's decision that Kleven has experienced medical improvement sufficient to return to work.

AFFIRMED.